In the Matter of the Taxation, under the Act Relating to Taxable Transfers of Property, of the Estate of CHARLES MILLER, Deceased.

GERTRUDE B. MILLER, Appellant; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

*Transfer tax — an ante-nuptial transfer and a retransfer in trust held not to be subject thereto — the construction of the ante-nuptial transfer is not affected by a subsequent will.*

By an ante-nuptial agreement, bearing date April 7, 1893, Charles Miller assigned to Gertrude B. Tefft, his intended wife, 2,000 shares of the stock of a corporation. By an agreement entered into between Miller and Miss Tefft, bearing date April 8, 1893, Miss Tefft reassigned the stock to Miller upon trust "to invest and re-invest the same in the purchase of real or personal property, and to change the investments as he may in his discretion, subject to the approval of the said party of the first part (Miss Tefft), think most advantageous, * * * and to receive, appropriate and apply to the mutual use of the parties to these presents the interest and income arising therefrom during the joint lives of said parties."

The agreement of April eighth further provided: "Upon the death of either of the parties hereto the trust hereby created shall terminate and come to an end; and in case the party of the first part should first die, leaving the party of the second part (Miller) surviving her, the said property hereinabove granted and assigned,

and the investments representing the same, shall thereupon become and be the absolute property of the party of the second part, freed from all trusts and conditions whatsoever; and in case the party of the second part should first die, leaving the party of the first part surviving him, then and in that case, the said property and the said investments representing the same, shall revert to the said party of the first part, and she hereby reserves the same in that event to herself in absolute ownership, free from all trusts and conditions whatsoever.

The contemplated marriage took place on April 8, 1893, subsequent to the execution of the instruments. Miller died January 19, 1901, leaving a will dated January 17, 1900, which contained the following provision: "*Second:* Whereas I have heretofore set apart and transferred to my wife Gertrude Benchley Miller two thousand (2,000) shares of the capital stock of the Phœnix Horse Shoe Company of Illinois of the par value of two hundred thousand dollars ($200,000), which stock I now hold under a certain deed of trust executed by my said wife to use (*sic*), bearing date the 7th day of April, 1893, I do hereby reaffirm the said transfer and do give and bequeath all the right, title and interest I may have, if any, in and to the said two thousand (2,000) shares of stock and in and to all the property in which the same may stand invested under the said trust deed at the time of my death, to my said wife absolutely."

The surrogate decided, upon the documentary evidence alone, that the agreements of April seventh and eighth were contemporaneous, and were made in contemplation of the death of Miller, and determined that the transfer of the stock was subject to a transfer tax.

*Held,* that the decree should be reversed;

That it was incumbent upon the State to prove the facts justifying the imposition of the transfer tax;

That, as the transfers from Miller to Miss Tefft and from Miss Tefft to Miller bore different dates, the presumption was that they were separate and distinct instruments, executed on the days of their respective dates, and that, in the absence of any evidence to the contrary, the surrogate was not justified in finding that such agreements were contemporaneous and parts of one transaction;

That the ante-nuptial agreement of April 7, 1893, was based upon a valuable consideration, and operated to confer on Miss Tefft the absolute ownership of the stock;

That the transfer effected by such instrument was not subject to the transfer tax, and was not rendered subject thereto by the agreement of April 8, 1893;

That the will of Charles Miller, considered as an act or declaration of his, could not affect the construction of the ante-nuptial transfer.

APPEAL by Gertrude B. Miller from an order of the Surrogate's Court of the county of Dutchess, entered in said Surrogate's Court on the 27th day of March, 1902, fixing a transfer tax upon 2,000 shares of stock mentioned in the 2d clause of the will of the decedent.

*Frederic R. Kellogg* and *Henry H. Van Cleef*, for the appellant.

*William Morgan Lee*, for the respondent.

GOODRICH, P. J. :

The surrogate of Dutchess county made an order adjudging that a transfer of stock in an Illinois corporation by the testator, Charles Miller, to Gertrude B. Tefft was made in contemplation of his death, and that the stock or its equivalent is subject to the payment of the tax imposed by section 220 of the Tax Law (Laws of 1896, chap. 908, as amd. by Laws of 1897, chap. 284), under the 3d subsection, reading : " 3. When the transfer is of property made by a resident or by a nonresident, when such nonresident's property is within this State, by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect, in possession or enjoyment, at or after such death."

The facts out of which this controversy arises are practically undisputed.  On April 7, 1893, Miller made an ante-nuptial written agreement, reciting his intended marriage with Miss Tefft and his desire to make pecuniary provision for her and providing that in consideration thereof he " doth assign, transfer, grant and set over and deliver at the time of the delivery hereof, unto the said party of the second part, two thousand (2,000) shares of the preferred capital stock of the Phœnix Horse Shoe Company of Illinois and the certificate therefor numbered thirteen (13)."

On April eighth Miller and Miss Tefft entered into another agreement stated to be in duplicate, wherein, " in consideration of the intended inter-marriage of the parties," Miss Tefft " doth assign, transfer, grant and set over unto " Miller " two thousand (2,000) shares of the preferred capital stock of the Phœnix Horse Shoe Company of Illinois and the certificate therefor numbered thirteen (13)," upon the trust, " to invest and re-invest the same in the purchase of real or personal property, and to change the investments as he may in his discretion, subject to the approval of the said party of the first part (Miss Tefft), think most advantageous, free from any limitations or restrictions prescribed by law relative to the kind of investments allowed for trust funds, and to receive, appropriate and apply to the mutual use of the parties to these presents the interest and income arising therefrom during the joint lives of said parties.

Upon the death of either of the parties hereto the trust hereby created shall terminate and come to an end ; and in case the party of the first part should first die, leaving the party of the second part (Miller) surviving her, the said property hereinabove granted and assigned, and the investments representing the same, shall thereupon become and be the absolute property of the party of the second part, freed from all trusts and conditions whatsoever ; and in case the party of the second part should first die, leaving the party of the first part surviving him, then and in that case, the said property and the said investments representing the same, shall revert to the said party of the first part, and she hereby reserves the same in that event to herself in absolute ownership, free from all trusts and conditions whatsoever.  Said party of the second part, in consideration of the premises and of the sum of One Dollar to him in hand paid by the said party of the second* part, the receipt of which is hereby acknowledged, does hereby acknowledge the delivery to him of the preferred stock and the certificate therefor within described, and does accept the same upon and subject to the trusts hereinbefore specified, and hereby agrees to hold, use, manage and account for the said property and the investments representing the same, subject to the terms, conditions and provisions hereinbefore recited."

The parties have stipulated in the record that Mr. Miller and Miss Tefft were married on April eighth, subsequently to the executions of said instruments ; that Miller died on January 19, 1901, leaving a will dated January 17, 1900, which has been admitted to probate by the surrogate of the county of Dutchess.

The will contained the following provision : "*Second :* Whereas I have heretofore set apart and transferred to my wife Gertrude Benchley Miller two thousand (2,000) shares of the capital stock of the Phœnix Horse Shoe Company of Illinois of the par value of two hundred thousand dollars ($200,000) which stock I now hold under a certain deed of trust executed by my said wife to use (*sic*), bearing date the 7th day of April, 1893, I do hereby reaffirm the said transfer and do give and bequeath all the right, title and interest I may have, if any, in and to the said two thousand (2,000) shares of stock and in and to all the property in which the same

---

may stand invested under the said trust deed at the time of my death, to my said wife absolutely."

There is in the record also an affidavit by Elisha H. Miller, one of the sons of the testator and one of the executors of his will, and apparently considered a part of the evidence, in which he says: " The two thousand shares of the stock of the Phœnix Horseshoe Company mentioned in the second clause of the Will were transferred by my father to Gertrude B. Tefft by a deed of absolute assignment dated April 7th, 1893, in contemplation of his marriage with her. On the following day Gertrude B. Tefft conveyed the said shares to my father by a deed of trust dated April 8th, 1893." This comprises the entire evidence upon which the learned surrogate based the following findings :

" I. That the transfer by Charles Miller to Gertrude B. Tefft, made on or about April 8th, 1893, of two thousand (2,000) shares of the preferred stock of the Phœnix Horseshoe Company of the par value of $100 per share was made in contemplation of the death of the said Charles Miller and was not intended to take effect in possession or enjoyment until at and after his death.

" II. That the said 2,000 shares of stock referred to valued at $180,000 or its equivalent, is subject to a transfer tax of one per cent. amounting to $1,800.00."

As there was no oral but only documentary evidence, we are in just as good a position to form an opinion as to the main point on which the decision of the appeal must rest as was the surrogate. He rested his decision absolutely and necessarily upon his finding that the agreements of April seventh and April eighth were contemporaneous and were made in contemplation of the death of Miller. If the instruments were not parts of the same transaction, and if the transfer of the stock to Miss Tefft on April seventh was a completed transaction, the reasons of the surrogate do not control the situation. In order to an intelligent discussion of the subject, I quote a portion of his opinion :

" No evidence as to the intent of the parties is presented except such as is contained in the agreements and in the will of Charles Miller. It is evident to me that the agreements were drawn with a view to the situation that has since arisen. The evidence of the second agreement being contemplated when the first was executed,

Second Department, December Term, 1902.        [Vol. 77.

so far as the instruments themselves furnish, is their proximity of
execution; the transfer of precisely the same property for the same
consideration.   It may be reasonably inferred from the character of
the property that Mr. Miller would be disinclined to divest himself
of all authority over it and not only lose the value of its influence
to him as a stockholder, but make it possible for it to pass into the
hands of those who might antagonize his interests.   Irrespective of
this evidence and inference I am unable to supply any reason for
the execution of the second agreement before the consideration for
the first had become operative, if the second was not in contempla-
tion when the first was executed.   Certainly the lapse of a few
hours between their execution, if such is the fact, will not suffice to
defeat the legislative intent to apply a tax to transfers of personal
property made in contemplation of death or intended to take effect
in possession or enjoyment at or after such death.   The provision
in the will indicates that the testator did not intend to divest him-
self of the rights of ownership, possession and enjoyment which
must pass by a transfer to take it without the scope of the act."

His first proposition, and this seems to me to be the crucial point
of the whole matter, is that the agreements and transactions of April
seventh and April eighth were contemporaneous and parts of one
transaction, and were so intended by Miller.   Of this he correctly
says there is no evidence except the agreements themselves and the
will.   This being true, I think the learned surrogate has given rein
to his imagination and has permitted surmise and suspicion to take
the place of presumption and legal deduction.   As the instruments
were executed on different days, the presumption is that they were
separate and distinct.   (See *Dechert* v. *Municipal Electric Light
Co.*, 9 App. Div. 573.)   The instrument of April eighth does not
even refer to the transfer of April seventh and in no sense is con-
ditioned upon it.   It must be assumed, in the absence of oral testi-
mony, that the agreement of April seventh was executed and the
stock delivered to Miss Tefft on the day of its date, and it appears
by the affidavit of the executor that the agreement of April eighth
was not executed until the next day after the agreement of April
seventh.   If this is so, the transaction was a completed transaction
of the day of its date, April seventh, and Miss Tefft became the
absolute owner of the stock by assignment and delivery.   It would

not even have been defeated by the death of Miller before the marriage had occurred.  (*Smith* v. *Allen*, 5 Allen, 454.)

It is true that it has been held that where two instruments are intended to embody a contract between the parties, they must be read and construed together, and the fact that they bear different dates is not material if the contract is not carried into effect until both are executed.  Respondent cites *Knowles* v. *Toone* (96 N. Y. 534).  In that case a note indorsed by a married woman was presented to the plaintiff for purchase.  He refused to purchase until she had answered certain questions.  Her written answer was dated three days after the date of the note, and thereupon the plaintiff purchased the note.  The court held that the note had no inception until the time of the purchase, and, as this occurred after her written answer, the note and the answer were part of one transaction.  But in the present case the transaction of April seventh was a completed sale and transfer of the stock accompanied by delivery of the certificate on that day.

The State has the burden of proving the facts under which the transfer tax may be imposed.  In *Matter of Enston* (113 N. Y. 174, 177, 178) it was said, Judge ANDREWS writing: " The tax imposed by this act is not a common burden upon all the property or upon the People within the State.  It is not a general, but a special tax, reaching only to special cases and affecting only a special class of persons.  The executors in this case do not, therefore, in any proper sense, claim exemption from a general tax or a common burden.  Their claim is that there is no law which imposes such a tax upon the property in their hands as executors.  If they were seeking to escape from general taxation, or to be exempted from a common burden imposed upon the People of the State generally, then the authorities cited by the learned counsel for the People, to the effect that an exemption thus claimed must be clearly made out, would be applicable.  But the executors come into court claiming that the special taxation provided for in the law of 1885 * is not applicable to them, or the property which they represent.  In such a case they have the right, both in reason and in justice, to claim that *they shall be clearly brought within the terms of the law before they shall be subjected to its burdens.  It is a well established*

---

* Laws of 1885, chap. 483.— [REP.

*rule that a citizen cannot be subjected to special burdens without the clear warrant of the law.* The following authorities furnish the true rule applicable to such a case : Cooley on Taxation (2d ed. 275); *United States* v. *Wiggleworth* * (2 Story, 373); *Powers* v. *Barney* (5 Blatch. 203); *United States* v. *Watts* (1 Bond, 583); *Doe* v. *Snaith* (8 Bing. 152); *Green* v. *Holloway* † (101 Mass. 248)." This decision was cited and reannounced in *Matter of Vassar* (127 N. Y. 1, 12), where it was said : "And the rule is that special tax laws are to be construed strictly against the government and favorable to the taxpayer, that a citizen cannot be subjected to special burdens without clear warrant of law."

So, also, in *Matter of Thorne* (44 App. Div. 8), this court, Mr. Justice HATCH writing, said (p. 10) : "The right to impose the tax must rest upon evidence sufficient in probative force to bring it within the statute, and must establish a case from which the law clearly authorized its imposition." It is hardly necessary to repeat that with the exception of the two instruments and the will there is no evidence upon which to base a finding that the two agreements were contemporaneous or one transaction.

Another principle is well established. Where any document bearing a date has been proved, the presumption is that it was made on the day on which it bears date. (Chase's Steph. Dig. Ev. art. 85 ; 1 Greenl. Ev. [15th ed.] § 38, note b.) This presumption not having been overcome by any evidence on the part of the State, it becomes conclusive that the two agreements were executed on the days of their date respectively. Then there is no evidence to justify a finding that they were contemporaneous and intended to be part and parcel of one transaction. It follows that the transaction of April seventh, which included the delivery of the certificate of stock to Miss Tefft, was complete in itself and that she became the absolute owner of the stock on that day. For an agreement of marriage is a valid consideration for such an agreement and transaction. The rule is well stated in 6 American and English Encyclopædia of Law (2d ed. p. 724) : "Marriage, in contemplation of law, is not only a valuable consideration for a contract or conveyance between the parties to it, but is a consideration of the highest value, and from motives of the soundest public policy is upheld with a strong reso-

---

* *United States* v. *Wigglesworth.*          † *Green* v. *Holway.*

lution. The husband and wife, parties to such a conveyance, are, therefore, deemed, in the highest sense, purchasers for a valuable consideration. * * * It is upon this principle that ante-nuptial settlements are upheld." (See, also, *Johnston* v. *Spicer*, 107 N. Y. 185; *Magniac* v. *Thompson*, 7 Pet. 348.)

I do not consider that the statute has reference to transfers made upon a valuable consideration, but that it relates merely to voluntary transfers without consideration, for the tax is not one upon property, but upon the right of succession. (*Matter of Dows*, 167 N. Y. 227.) A payment of an obligation dependent upon a valuable consideration is not a succession in any sense. In this case the transfer was made eight years before the death of Miller. There is no evidence that Miller was in ill-health or that there was any condition of affairs to suggest or invite the contemplation of death. It was rather made in contemplation of life and for a definite purpose, that of providing a means of mutual support for himself and his intended wife. There is not a suggestion of any intent to evade the provisions of the Transfer Tax Act unless it shall be decided that the two instruments were contemporaneous, and that I have already discussed. The income was to be devoted to the mutual support of husband and wife. Miss Tefft had an immediate and undivided interest in joinder with Miller to every dollar of income of the trust fund and was the absolute owner of the principal, subject to the trust. In other words, being absolute owner by the agreement of April seventh by the agreement of April eighth she continued vested with the present, although not with the exclusive right of enjoyment of the stock and its income. This is not within the purview of the Transfer Tax Act.

But the State contends and the surrogate holds that the instrument of April seventh is illuminated and is to be interpreted by the 2d clause in the will of the testator above cited. To give the will any such effect would be to violate the settled canon of law that no act or declaration of a grantor subsequent to his transfer of property can affect the rights of the grantee. A declaration of a grantor to be effective must be made while he is owner and in possession of the property, and the act must precede or be contemporaneous with the principal act. (1 Greenl. Ev. § 110; Chase's Steph. Dig. Ev. art. 3.)

Neither can it be said that the trust agreement of April eighth is contemporaneous with the agreement of April seventh. The title of Miss Tefft to the stock was complete and absolute on April seventh. The instrument was accompanied by a delivery of the certificate of stock. The affidavit of Elisha H. Miller shows that the agreement of April eighth was not executed until the next day. We must not lose sight of the fact that we are searching for the intention, not of Miss Tefft, but of Miller in the transaction. If there was nothing more than the transfer of April seventh to interpret could it be even suggested that the transfer was made in contemplation of the death of Miller, or that it was not founded upon a valuable consideration and was absolute and completed? Probably death is the last thing in the mind of an expectant bridegroom. There is only the instrument of April eighth which casts a shadow of a doubt upon the completeness of the transaction of April seventh, and that, in my opinion, was not contemporaneous with the agreement of April seventh and was not intended to be. There is no evidence from which any such intent can be inferred.

Miss Tefft, being then the absolute owner of the stock, could make such pledge, division or disposition of it and its income as she saw fit, without regard to the Transfer Tax Act. It is immaterial what was her intention unless there is evidence sufficient to support a finding that the two agreements were parts of one transaction and were made in contemplation of Miller's death and to defeat the operation of the statute. The death of Miller was but an incident in the matter contained in the agreement of April eighth. It was not of its substance. It merely fixed a date when any interest of Miller in the income was to cease. He had no interest in the principal unless he survived Miss Tefft. There was no transfer to him of the absolute title of the stock in the agreement of April eighth. True the legal title of the stock was transferred to Miller, but it was on a specified trust, and no disposition of it could be made by him except "subject to the approval" of Miss Tefft.

By the agreement of April eighth Miss Tefft devoted the income to the "mutual use" of herself and her intended husband. Being absolute owner she had the right to do so. But this is not to say that the agreement affords any evidence that Miller transferred the stock to her on April seventh in contemplation of his death. The

transfer of April seventh to her was not intended "to take effect in possession or enjoyment at or after" his death.  Both possession and enjoyment were transferred to her absolutely *in præsenti* by the language of the transfer of April seventh, and were not postponed until, or in any sense dependent upon, his death.

In *Matter of Brandreth* (169 N. Y. 437) it was said by the court, Judge CULLEN writing, that the Brandreth "transfer became subject to taxation, if at all, when it was made, and no subsequent transfers made by the parties could relieve it from such liability." I think the converse of the proposition is equally true, and that the transfer to Miss Tefft, being made on April seventh, for a valuable consideration and absolutely, the subsequent agreement of Miller with Miss Tefft does not make the transfer of April seventh subject to the transfer tax.

The respondent's counsel relies upon three cases, *Matter of Green* (153 N. Y. 223); *Matter of Bostwick* (160 id. 489), and *Matter of Brandreth* (169 id. 437).  They do not apply to the case at bar.  In the *Green* case the property was delivered by the owner to a trustee under an instrument purporting to assign it to the trustee to collect the income and apply it to the sole use of the grantor during his life, and after the grantor's death to distribute it among remaindermen.  The court said, through Judge O'BRIEN: "The death of the donor was the event which made the transfer complete and effective, and secured to the nieces the possession and enjoyment of the property."  In the case at bar the transfer by Miller to Miss Tefft was absolute under the agreement of April seventh, and was not dependent on the agreement of April eighth.

So in the *Bostwick* case the trust deed was the act of the testator, and he was therein authorized to revest himself with the ownership of the property and to dispose of it as effectually as he might previously have done without any right in the grantee to control his acts.  Thus also in the *Brandreth* case, the grantor made a gift of stock to his four daughters, and transferred it to them upon the condition that he should receive all the dividends during his lifetime, with the right to vote on the stock as though no transfer had been made.

In all these cases the grant was made by the testator; the act was exclusively his.  There was no previous and absolute transfer of

the property to the grantee and no transfer, except by the instruments which reserved rights to him inconsistent with the idea of ownership until the death of the grantor. In the case at bar the transfer of the stock to Miss Tefft was complete and absolute, without any reservation whatever, on April seventh. Whatever occurred thereafter was not the sole act of Miller. The transfer of April eighth was by Miss Tefft to Miller, and not by Miller to her.

I cannot escape the conclusion that the learned surrogate was in error in holding, on the sole evidence of the two agreements and the will, that the two agreements were contemporaneous and parts of one transaction, and were made in contemplation of the death of Miller and to avoid the imposition of a transfer tax.

It follows that his decree should be reversed.

All concurred.

Decree of the Surrogate's Court of Dutchess county reversed, with ten dollars costs and disbursements.