A husband agreed, in consideration of a release by his wife of all rights against him or in his estate, to pay, through a trustee, a life annuity to her, with an option in her of demanding on his death a gross sum from his estate, calculated upon her expectancy of life at his death, sufficient to discharge prospective payments of annuity. By his will he created a trust in his executors to continue the annuity in case she refused the gross sum. *Held*, that such devise was not taxable to her, as to the corpus, as the will transferred nothing to her, and she received no benefit thereunder.

In the matter of the estate of John Daniell, deceased. From an order fixing the transfer tax, the executors appeal. Appeal sustained.

Edward A. Blackmar, for executors.

Edward H. Fallows, for State Comptroller.

FITZGERALD, S. Appeal by the executors from an order fixing the transfer tax. The decedent died in March, 1902. On June 14, 1898, an agreement was entered into between the decedent, Albert Wilkins, trustee, and Anna W. Daniell, the wife of testator, by which the decedent agreed to pay to Wilkins $2,500 a year during the lifetime of decedent's wife, for her use and benefit. The agreement also provided that, in case decedent's wife survived him, the trustee, Wilkins, might, if the wife elected so to do, demand payment from the estate of a gross sum in satisfaction of the payments thereafter to fall due under the agreement; such sum to be ascertained by multiplying the amount of the annuity by the expectancy of life of the wife according to the Northampton Tables, as of the date of the death of the decedent. The wife accepted the provisions of this agreement in lieu of all claims for support against the decedent, and in lieu of dower, and also in lieu of any claim to a distributive share of the decedent's estate. Former articles of agreement, presumably relating to the same subject-matter, made between the same parties in December, 1887, are canceled, and the covenants in this agreement substituted. The brief of the Comptroller states that the decedent and his wife were separated, but I find no evidence in the rec-

ord on this subject. The will of decedent was executed in 1901. The tenth paragraph recites the agreement hereinbefore set forth, and authorizes his executors, in case his wife shall not elect to receive a gross sum in lieu of said annuity, to set apart the sum of $40,000, which he gave to his executors in trust, to invest and apply the income, so far as it will suffice, to the payment of said annuity, and to make up any deficiency from the principal. Upon the death of his wife, or upon the acceptance by her of a gross sum in lieu of said annuity, the trustees are directed to divide the balance between the two sons. The appraiser not only refused to deduct the value of this annuity as a debt or obligation owing from the estate, but reported its value as a taxable transfer under the will to the wife. The order fixing tax was entered accordingly, and from this finding the executors appeal.

Nothing was transferred to the testator's widow by the tenth paragraph of the will. That clause is a mere direction and authorization by the testator to his executors as to the manner in which the obligation created by the agreement of June 14, 1898, should be provided for, in the event that the widow failed to exercise the election given thereunder. It is simply a direction of the testator as to the manner in which his estate shall be administered. It confers no benefit upon the widow. The election to take a gross sum has not been exercised. It is doubtful if it can now be exercised. The agreement provides that the gross sum to be paid shall be computed according to the expectancy of life of the widow at the death of the decedent. The decedent died in March, 1902. Nearly a year has elapsed. Would a court of equity construe the agreement so that the wife might draw her annuity for an indefinite period, and then receive a gross sum, calculated as of the time of the decedent's death? It seems manifest that the agreement contemplated that the election should be exercised soon after the testator's death, and the method of ascertaining the gross amount was thus specifically defined.

The decision in the Gould Case, 156 N. Y. 423, 51 N. E. 287, is readily distinguishable from the case at bar. There "the son consented to accept payment for his services under this provision of the will." Page 426, 156 N. Y., and page 288, 51 N. E. It is only where the "devise or bequest is accepted by the beneficiary that the transfer is made by the will, and the statute in question makes a tax to impinge upon that performance." Page 428, 156 N. Y., and page 288, 51 N. E. "That Jay Gould attempted to transfer the property mentioned in the codicil to his son George by will appears upon the face of the instrument. That the son agreed to accept the transfer of the property to him by that method appears from his testimony that he stated to his father that the provision for compensation was satisfactory, and that he had accepted the benefit of this provision is unquestioned. The result, therefore, is a transfer to him by will of the property therein described, and the statutory command that upon property thus transferred a tax should be imposed must be obeyed." See, also, Matter of Rogers' Estate, 71 App. Div. 461, 75 N. Y. Supp. 835, affirmed in 172 N. Y. 617, 64 N. E. 1125; Matter of Miller's Estate, 77 App. Div. 473, 78 N. Y. Supp. 930.

I conclude, therefore, that the appeal must be sustained; that so much of the tax levied against the widow as is based upon the annuity under the agreement must be stricken out, and its value deducted from the taxable estate as a debt or obligation.

Appeal sustained.