In the Matter of the Transfer Tax Upon the Estate of CHARLES CORY, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; JOHN M. CORY, as Executor, etc., Respondent.

First Department, May 4, 1917.

Tax — transfer tax — ante-mortem agreement to sell stock at agreed valuation — mutual wills pursuant to said agreement — stock taxable at fair market value — valuation of parties not binding.

Where two brothers who were equal owners of the stock of a business corporation entered into an agreement which gave to the survivor of them the option to purchase the stock of the one first dying at an

First Department, May, 1917.            [Vol. 177.

agreed valuation of sixty dollars per share, there being nothing in the agreement which prevented either brother from selling his holdings prior to his death, and pursuant to said agreement they drew mutual wills in which the executors were directed to carry out the agreement and to transfer said stock to the survivor, who should be credited as payment thereon with sums which he would receive from another bequest, the proposed transfer was intended to take effect in possession or enjoyment only at death, and hence the transfer tax on the stock on the death of one of the brothers should be assessed at its fair market value, although in excess of the valuation placed upon it by the contract and will.

*It seems*, that a testator cannot put an arbitrary value upon his property which shall be taken as its appraisal value in assessing a transfer tax thereon.

PAGE, J., dissented, with opinion.

APPEAL by the Comptroller of the State of New York from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 3d day of October, 1916, affirming a prior order fixing a transfer tax.

*Alexander Otis*, for the appellant.

*Austin E. Pressinger*, for the respondent.

SCOTT, J.:

This is an appeal by the State Comptroller from an order of one of the surrogates of New York county finally assessing the tax payable under the Transfer Tax Law upon the estate of the above named decedent.

The question raised by the appeal has to do with the valuation to be placed upon five hundred shares of stock in the corporation of Chas. Cory & Son, Inc., which were owned by the testator at his death, and which were transferred by his executor to the appellant John M. Cory at an arbitrary valuation agreed upon by said decedent and said John M. Cory during the lifetime of the former.

The aforesaid decedent and John M. Cory were brothers and until May, 1913, were equal partners in a business conducted under the firm name of Chas. Cory & Son, which had come to them from their father. In May, 1913, they organized a corporation under the same name with 1,000 shares of stock of which 500 shares were issued to each.

On September 12, 1913, they entered into a mutual agreement as follows: "Now, therefore, in consideration of One Dollar and other valuable considerations by each of the parties hereto in hand paid, the receipt whereof is hereby acknowledged, the parties hereto do agree, each with the other, that upon the death of either of the parties to this agreement, the other of said parties shall have the option to purchase from the executors of the one so dying, all shares of stock owned by the party to this agreement so dying at the time of his decease, in said corporation of Charles Cory & Son, Incorporated, at the price of Sixty Dollars per share, and the parties hereto respectively agree, each with the other, that upon the death of either of them, the survivor will purchase the stock of the one so dying from his executors and pay therefor, said price of Sixty Dollars per share."

On the same day the brothers executed identical wills. Charles Cory died on November 25, 1914, leaving the will executed by him as aforesaid, and still owning the 500 shares of stock in the above mentioned corporation. He left two sisters and the above-mentioned brother John M. Cory. By paragraph 2 of his will he gave all of his property, after payment of debts and funeral expenses to his said sisters and brother "to be divided among them equally share and share alike." As to his stock in the corporation of Chas. Cory & Son, Inc., he provided as follows: "*Third.* I hereby reaffirm the agreement made between my brother John M. Cory and myself, to the sale to him by my executors of any and all shares of stock in the corporation of Charles Cory & Son, Incorporated, which I may own at the time of my decease and direct and instruct my executors hereinafter named to carry out the terms of said agreement. And I further direct my said executors to allow my said brother, credit on his share in my residuary estate for any and all moneys, which, under the terms of said agreement, shall be payable by him to my executors, to the extent of the amount of his share or interest in my said estate, and I authorize my said executors to accept and receive in lieu of such payment, a receipt or acquittance to them, as such executors, for so much of the said moneys as may be payable by him to them under said agreement, to the extent of the

moneys which he may be entitled to receive on the distribution of my said estate."

The shares were thereupon transferred to John M. Cory at the price fixed by the aforesaid agreement of sixty dollars per share.

The appraiser reported that the fair market value of said shares was $103,400, which valuation is not questioned on this appeal. The surrogate, however, on appeal, reduced the value to $30,000, the sum fixed by the aforesaid agreement. The shares appear to have been of substantially the same value when the aforesaid agreement was made and when the decedent died.

The result of the surrogate's decision is that property owned by the decedent at the time of his death and then worth over $100,000, and which after his death was transferred to his brother, has been taxed at a valuation of only $30,000. This is claimed by the respondent to be the necessary result of the ante-mortem contract made between the two brothers.

Subdivision 4 of section 220 of the Transfer Tax Act imposes a tax upon the "transfer * * * by deed, grant, bargain, sale or gift * * * intended to take effect in possession or enjoyment at or after * * * death." (Tax Law [Consol. Laws, chap. 60; Laws of 1909, chap. 62], § 220, subd. 4, as amd. by Laws of 1911, chap. 732.)* The transfer of the stock to John M. Cory falls exactly within the terms of the act. There was no present sale of the stock from Charles Cory to his brother, but merely a contract that after Charles Cory's death John M. Cory might purchase the stock at an agreed price. We are of the opinion that the mutuality of obligation assumed by the brothers furnished a sufficient consideration for their mutual agreement, but, even so, the agreement constituted merely a mutual bargain for the sale of the stock after the death of whichever brother should first die, and under which the transfer of ownership could not take effect either in possession or enjoyment until after death. In fact, so long as Charles Cory lived he could at any time have sold or otherwise parted with the stock as he chose, without violating his agreement with his brother,

---

* Since amd. by Laws of 1915, chap. 664, and Laws of 1916, chap. 323.— [REP.

which in terms applied only to the stock owned by the brother first dying "at the time of my decease." Until one of the brothers died the contract remained wholly executory, and after death the only right given to the survivor was that he might buy the stock from the estate of the decedent, paying therefor $60 per share. The case thus presented is quite unlike *Matter of Baker* (83 App. Div. 530; affd., 178 N. Y. 575). In that case one Henry B. Baker being about to marry, entered into an ante-nuptial contract with his prospective wife whereby he agreed, in consideration of the contemplated marriage, to presently give her the sum of $1,000, and if the marriage were consummated and his wife outlived him that he would provide by will for the payment of $20,000 to her out of his estate. The wife on her part agreed to accept this provision in lieu of her dower rights in her husband's property. Baker died intestate leaving his widow and a sister, who was his next of kin and only heir at law, and by agreement between them the $20,000 was paid to the widow out of the estate. The question was whether this sum was taxable, and it was held that it was not because the agreement that the wife should be paid out of the estate created a debt payable out of the husband's estate after his death. The difference between that case and the present seems to be obvious. There the husband received a present consideration on the making of the contract. So far as the wife was concerned it was fully executed. For this consideration the husband agreed that his wife should receive a sum of money out of his estate, payment being postponed until his death. It was precisely as if the husband for a present valuable consideration had given the wife a promissory note or a bond for $20,000 payable at his death. In the principal case the contract was purely executory on both sides. No consideration passed from one party to the other, except the mutual promises, and no debt was created from one party to the other. *Logan* v. *Whitley* (129 App. Div. 666), although not a transfer tax case, arose under a similar contract to that in the *Baker* case, and again it was held that the contract had been wholly executed by the wife, and that the sum which he had agreed to give her at his death constituted a debt against his estate. The *Baker* case and other similar cases were

clearly distinguished by the Court of Appeals in *Matter of Kidd* (188 N. Y. 274), a case much resembling in principle the present case. There it appeared that George W. Kidd being about to marry a widow, entered into an ante-nuptial contract with her whereby in consideration of the marriage, and the promise of his expectant wife to turn over to him the sum of $40,000, he agreed that he would adopt Grace G. Slocum, her daughter, give her his name and make her his heir, and, if there should be no issue of the marriage (as there was not) that he would devise and bequeath all of his property to said Grace G. Slocum. The mother fulfilled her part of the agreement, but Kidd failed to fulfill his part, leaving at his death a will whereby he disposed of his property otherwise than as he had agreed. Grace G. Slocum (then named Dickinson) sued to establish Kidd's contract for her benefit, and succeeded in obtaining a judgment that she was entitled to his whole estate. The question was whether the property thus recovered was subject to a transfer tax. It was held that it was. It was pointed out in the opinion that no present interest in the estate vested in Miss Slocum by virtue of Kidd's agreement with her mother. All that Kidd agreed to do was to leave her whatever he might have when he died, but in the meantime, while he could not have conveyed away his property in fraud of her rights, he might have entirely consumed it in living expenses or have lost it in speculation. So in the present case John M. Cory acquired no title or right to possession to the stock during the lifetime of his brother Charles. All he acquired was the right to purchase at Charles' death such stock as the latter might then own.

In my opinion the will executed by Charles Cory is significant, and yet unless carefully considered is likely to be misleading. By the 2d paragraph of his will Charles Cory purported to divide his estate equally between his two sisters and his brother, but by the 3d paragraph he, in effect, created an inequality by providing that there should be transferred to the brother, at the arbitrary valuation of $30,000, stock of the true value of $103,400. The effect of this 3d paragraph was as if he had in terms directed that the stock which he held in Chas. Cory & Son, Inc., should, for the purpose of dis-

tribution, be valued at $60 per share and should be delivered to his brother at that valuation as a part of his distributive share in the estate.   This of course he had a perfect right to do so far as his legatees were concerned, but the result would have been, and in fact was, so far as the State was concerned, that by the contract and will read together John M. Cory received in possession and enjoyment after his brother's death stock worth upwards of $100,000.   In other words, for the purpose of distribution, the testator might put any arbitrary value he chose upon the stock, but for the purpose of assessment for taxation under the Transfer Tax Law, the stock is to be appraised at its real value, and it is unimportant under the statute that the sale of the stock to John M. Cory at the arbitrary valuation was provided for by an *ante-mortem* bargain or contract, since the transfer by virtue of that contract was clearly "intended to take effect in possession or enjoyment at or after" the brother's death.   To apply any other rule to a case like the present would open the door to unlimited devices to avoid the payment of transfer taxes.   My conclusion is that the stock in question should be appraised for the purpose of the transfer tax at its fair market value at the time of the testator's death.

The order, in so far as appealed from, is, therefore, reversed, with ten dollars costs and disbursements to appellant payable out of the estate, and the matter remitted to the Surrogate's Court for further proceedings in accordance with this opinion.

CLARKE, P. J., LAUGHLIN and SMITH, JJ., concurred; PAGE, J., dissented.

PAGE, J. (dissenting):

The sale and transfer of the stock in the Charles Cory & Son, Inc., by the executors of Charles Cory to John M. Cory, pursuant to the contract made by Charles Cory in his lifetime, does not, in my opinion, come within either the letter or spirit of the Transfer Tax Law.

After giving the history of the development of the law imposing taxes on the transmission of or succession to the property of a decedent, under the Roman and ancient law and the modern law of France, Germany and other continental

countries, of England and her colonies, of the United States and the several states of the Union, Mr. Justice (now Chief Justice) WHITE said: "Although different modes of assessing such duties prevail, and although they have different accidental names, * * * nevertheless tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested." (*Knowlton* v. *Moore,* 178 U. S. 41, 56.)

The New York Transfer Tax Law has been upheld and its constitutionality affirmed upon the theory that the right to dispose of property by will or by deed to take effect upon death of the grantor is not an inherent or natural right, but exists solely by legislative enactment, and hence is subject to regulation, limitation and tax. (*United States* v. *Perkins,* 163 U. S. 625, 628; *Keeney* v. *New York,* 222 id. 525, 533.) The right of the owner to sell his property is an inherent and natural right. He has the right also to contract to sell upon a valuable consideration and to bind his executors to perform the contract and the performance of such a contract by the executors would not render the purchaser liable to pay a transfer tax, nor has it ever been contended that a sale of property by executors, pursuant to a power and direction to sell contained in a will, rendered the purchaser liable to a transfer tax.

In the case at bar the mutual promise of each to purchase from the executors of the other the shares of stock in Charles Cory & Son., Inc., which the one first dying owned at the time of his decease, was a valuable consideration for the contract of September 12, 1913. Each thereby relinquished his right to bequeath the stock, and each secured the benefit of obtaining, at a price therein fixed, the share of the business represented by the stock certificates of the other. So that instead of owning one-half, he could become the owner of the entire business. The right to purchase the stock became vested at the time of the signing of this agreement. It cannot be doubted that the executors of Charles Cory could have enforced the contract and compelled John M. Cory to purchase and pay for the stock at

the price therein fixed. The contract did not become testamentary in its character, although the obligation of the contract to sell did not become due until after the death of the one first dying. The obligation to sell at the price named was the outgrowth of the contract entered into by the parties in their lifetime upon a valuable consideration. The right to the stock grows out of the contract and not from the death of the party.

In principle this case cannot be distinguished from the other cases of contracts made during lifetime upon a valuable consideration to be performed after death (*Johnston* v. *Spicer*, 107 N. Y. 185; *Carnwright* v. *Gray*, 127 id. 92; *Hegeman* v. *Moon*, 131 id. 462), which have been held not to come within the Transfer Tax Law. (*Matter of Miller*, 77 App. Div. 473, 481; *Matter of Baker*, 83 id. 530; affd. on opinion below, 178 N. Y. 575.)

The words "transfer * * * by deed, grant, bargain, sale or gift," used in subdivision 4 of section 220 of the Tax Law (Consol. Laws, chap. 60 [Laws of 1909, chap. 62], as amd. by Laws of 1911, chap. 732),* all refer to transfers without consideration and operative by way of gift. In *Matter of Miller* (*supra*, 481) the presiding justice said: "I do not consider that the statute has reference to transfers made upon a valuable consideration, but that it relates merely to voluntary transfers without consideration." In construing the meaning of similar language used in the Federal War Revenue Act of 1898 (30 U. S. Stat. at Large, 464, § 29) the Supreme Court of the United States groups them all as gifts. (*Knowlton* v. *Moore*, *supra*, 67; *Vanderbilt* v. *Eidman*, 196 U. S. 480, 493.) In my opinion the said words in our statute do not refer to deeds or contracts made during lifetime for a valuable consideration although the time for performance may be fixed after the death of one of the parties, but to voluntary conveyances or agreements made without a valuable consideration. (*Blair* v. *Herold*, 150 Fed. Rep. 199, 202; affd., *Herold* v. *Blair*, 158 id. 804; *Hagerty* v. *State*, 55 Ohio St. 613.)

---

* Since amd. by Laws of 1915, chap. 664, and Laws of 1916, chap. 323.— [REP.

The case of *Matter of Kidd* (188 N. Y. 274), relied upon by the majority of the court, is clearly distinguishable. The contract in that case was that Kidd was to leave his property *by will* to the daughter of his prospective wife. The court said (p. 278): " It was not a contract to convey, but a contract to make a will in her favor. Had the deceased performed his agreement and given her his property by will, the estate would have been subject to the tax," thus showing that the property would have been transferred not by right of contract but by virtue of a will and hence was a transmission of property by death and subject to the payment of death duties.

I am not unmindful of the fact that persons seeking to transfer their property to take effect after their death, naturally desire to have it transmitted undiminished by tax, and that ingenious schemes are adopted by fertile minds to evade the law. Where such attempt appears the courts have been swift to brush aside the form adopted and to consider the intent. The possibility of abuse is not a controlling element in construction.

If a transfer is attempted to be made without present valuable consideration to take effect after death, the courts will impose the tax no matter in what language the instrument is framed.

The order, in my opinion, should be affirmed.

Order reversed, with ten dollars costs and disbursements to appellant payable out of the estate, and proceeding remitted to surrogate.