In the Matter of the Transfer Tax upon Certain Trusts made by JABEZ A. BOSTWICK, Deceased.

FANNIE E. CARSTAIRS et al., Appellants; THE COMPTROLLER OF THE CITY OF NEW YORK, Respondent.

TAXABLE TRANSFER — TRUST DEED DISCLOSING GIFT TO TAKE EFFECT ON GRANTOR'S DEATH. A trust deed did not constitute an absolute gift of the grantor's property during his life, so as to exempt the transfer from taxation under the Taxable Transfer Act of 1892 (Ch. 399) as a gift intended to take effect at or after the grantor's death, where, after the delivery of the deed to the trustee, the grantor not only was entitled at any time to revest himself with the ownership of the property, but he continued to be able to enjoy it or to manage and dispose of it as effectually as he might previously have done, by the reservation to himself of powers to alter or amend the trust by notice to the trustee, to withdraw or exchange any securities, and to control the acts of the trustee in selling or disposing of the securities, or with respect to investments.

*Matter of Bostwick*, 38 App, Div. 223, affirmed.

(Argued October 2, 1899; decided November 21, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 20, 1899, which affirmed a decree of the Surrogate's Court of the county of New York, imposing a transfer tax upon the appellants for property received by them under certain trust deeds executed by Jabez A. Bostwick, deceased.

Mr. Bostwick, in his lifetime, made several transfers of property to the New York Life Insurance & Trust Company, as trustee. Three of these trust deeds were made in 1889 and transferred the property described therein in trust for his three sisters during their lives; providing, in each case, upon the death of the beneficiary, for the future disposition of the trust fund. The donor in these deeds reserved to himself, during the continuance of the trust, certain powers; namely, to direct the payment of the income to himself during his life, or to such other persons than the beneficiaries as he might designate in writing; to withdraw the securities constituting the trust

fund· and to substitute others; to alter or amend the trust and to add property thereto, and to terminate the same at any time during his life by a written notice to the trustee. With respect to these three trust transfers of property, it appears that, in one case, the donor received two-thirds of the income, and, in the other two cases, one-half of the income until his death, according to his direction. The fourth trust deed was made in 1890 and· by its terms the income was to be paid to the donor, or to such persons therein named as he might direct, during his life. Upon his death, provision was made for à division of the property into various trusts. Powers· were reserved by the donor, which were similar to those contained in the trust deeds for his sisters, and it appears that the donor received the whole of the income from the property until his death. Two other trust deeds were made in 1892 for the benefit of Mr. Bostwick's two daughters; by the terms of which the income of the trusts was to be paid to them during their lives, and upon their decease the securities constituting the trust fund were to be paid over to their children, and, in the event of a. default of issue, other provision was made for the disposition of the property. There were reserved to the donor, in each of these two deeds, during his life, powers to alter or to amend the trust whenever he might desire; to withdraw any portion of the trust properties, or to exchange any portion of the same by substituting any other securities as he might in writing direct; to add to the trust; to control any sale, or other disposition, by the trustee of the securities and to terminate the trust at any time during the donor's life, upon written notice to the trustee. There was no reservation of power to direct the payment of the income of the trusts.

*R. E. Robinson* for appellants. In the deeds to Mrs. Morrell and Mrs. Carstairs the transfers in possession and enjoyment were completely made during the lifetime of the donor. (*Matter of Seaman,* 147 N. Y. 69; *Matter of Masury,* 28 App. Div. 580; 159 N. Y. 532.) Even if such transfer was

not complete until the death of the donor, the tax would not attach, because possession and enjoyment by the beneficiaries were not dependent upon his death. (*Matter of Masury*, 28 App. Div. 580; 159 N. Y. 532.) A design to evade the act cannot be presumed from the existence in the trust instrument of powers reserved to the donor of altering and revoking a trust for the benefit of a third person. (*Matter of Ogsbury*, 7 App. Div. 71.)

*Jabish Holmes, Jr., Elliott Danforth* and *Edgar J. Levey*, for respondent. Whether the deeds were intended to take effect in possession or enjoyment at or after the grantor's death depends, not upon whether there was a technical transfer to the trustee, but upon the intent with which Bostwick executed them. (L. 1892, ch. 399, § 1; L. 1887, ch. 713; *People ex rel.* v. *Barker*, 152 N. Y. 417; 155 N. Y. 322; *Matter of Hoffman*, 143 N. Y. 327; *Matter of Roosevelt*, 143 N. Y. 120; *Matter of Curtis*, 142 N. Y. 219; *Matter of Ogsbury*, 7 App. Div. 77; *Matter of Green*, 153 N. Y. 223; *Lines' Estate*, 155 Penn. St. 378; *Appeal of Sieberts*, 110 Penn. St. 329; *DuBois' Appeal*, 121 Penn. St. 368.) The Morrell trust and Carstairs trust were made by Bostwick in contemplation of his death and were intended by Bostwick to take effect in possession or enjoyment at or after his death. (*Matter of Ogsbury*, 7 App. Div. 77; *N. Y. L. I. & T. Co.* v. *Livingston*, 133 N. Y. 128; *Gray* v. *Barton*, 55 N. Y. 73; *Bedell* v. *Carll*, 33 N. Y. 584; *Beaver* v. *Beaver*, 117 N. Y. 429; *Lines' Estate*, 155 Penn. St. 378; *Appeal of Sieberts*, 110 Penn. St. 329; *Reisch* v. *Commonwealth*, 106 Penn. St. 521; *DuBois' Appeal*, 121 Penn. St. 368.) The Wyatt trust, the Caldtrider trust, the Sarah Ann Robinson trust and the A. F. Bostwick trust were each made or intended to take effect in possession or enjoyment after the death of Jabez A. Bostwick and were, therefore, taxable. (*Matter of Green*, 153 N. Y. 223; *Matter of Seaman*, 147 N. Y. 77; *Matter of Masury*, 28 App. Div. 580.) The order should be affirmed. (*Matter of Ogsbury*, 7 App. Div. 71.)

GRAY, J. We are inclined to concur with the opinion, entertained by the learned justices of the Appellate Division, that Bostwick did not, in fact, during his lifetime, dispose of the property affected by these trust deeds ; inasmuch as, after their delivery to the trustee, he not only was entitled at any time to revest himself with the ownership of the property, but he continued to be able, in some cases, to enjoy it and, in all cases, practically, to manage and to dispose of it, as effectually as he might previously have done.

The only difficulty, which arises, is with respect to the two trust transfers in favor of Bostwick's daughters. As to the other transfers, there can be no reasonable doubt that the properties affected thereby were subject to the operation of the Transfer Act. It is quite clear, from the terms of the trust instruments, that the donor retained such a control over the trusts and such a right to dispose of the income, as to make evident an intention on his part that the beneficial enjoyment of the property, by its remaining dependent upon his direction, was not to take effect until after his death. The usual absoluteness of right and enjoyment, which a completed gift carries, was wanting. But, as to the transfers for the daughters, it is argued that the *Masury Case* (28 Appellate Division, 580 ; affirmed in this court, without opinion, 159 N. Y. 532) controls. In the *Masury* case, the deeds of trust, which were made in favor of the donor's adopted sons, and as to which it was held that the Transfer Tax Act did not apply, provided, each, for the payment of the income of the trust to the beneficiary during his minority and for the delivery to him of the securities, when he should attain his majority. The powers reserved in those deeds to revoke, or to annul, the trust during the donor's lifetime were considered, of themselves, not to affect the present vesting of the property, or to make its beneficial enjoyment contingent upon the death of the donor. There appeared to be nothing in the transaction, which pointed to the existence of an intention on the part of the donor that his transfer should not be absolute, or that the beneficial enjoyment of his gift should be postponed until his death.

The reserved power to revoke would enable him, of course, to put an end to the trust; but that was not enough to affect the possession of the trustee, or the beneficial enjoyment of the object of the donor's bounty, while the trust was in force, and such a power carried with it no control over the property or its management.

In the present case, however, the donor has reserved, during his life, such numerous and extensive powers over the properties transferred by his deeds, as to preclude the legitimate inference of an intention on his part that they were to take effect in absolute possession or enjoyment before his death.

The act of 1892, (Chap. 399, sec. 1, subd. 3), whose provisions must control, provided for the imposition of the tax upon the transfer of property, when it was made in contemplation of death, " or intended to take effect in possession or enjoyment at or after such death." We must discover the intention of Mr. Bostwick by considering the language of the instruments, through which he transferred his properties to the trustee. Instead of an out and out gift, which would provide for the enjoyment by the beneficiary of the income of the property during her life and for the disposition of the trust fund thereafter, we find powers reserved to alter, or amend, the trust by notice to the trustee ; to withdraw, or to exchange, any securities, and to control the acts of the trustee in selling, or disposing of, the securities, or with respect to investments. All these are indicia, rather, of an intention on the donor's part to retain a dominion over the properties transferred, and do not consist with an existing purpose to vest the absolute right to present and future enjoyment in the beneficiaries. He retained practical control of the trust property and left the question of its beneficial enjoyment and eventual possession open until his death.

The affirmance of the decision in the *Masury* case may seem to have committed this court to views which support the contention now made in behalf of these appellants; but, if that be so, it is an erroneous inference from that decision.

I think that we may have gone too far in generally affirm-

ing the *Masury* decision; certainly the limit was then reached, beyond which the courts could not go without emasculating the provisions of the statute. We thought there was some reason in the facts of the *Masury* case for finding an intention in the donor to make an absolute transfer of property during his life, which the mere reservation of a power to revoke was, of itself, insufficient to negative. But, if the trust transfers now in question were held to be without the operation of the act, too dangerous a latitude of action would be permitted to persons who desired to evade its provisions by some technical transfer, which would still leave the substantial rights of ownership in the donor. If a person intends, in good faith, to make an absolute gift of his property during his life to others and thereby to make a provision for them, which shall not be contingent as to its possession or enjoyment upon the event of his death, there is no inhibition in the act in that respect. The intent of the law is plain and it is the duty of the courts to give that construction to its provisions, which will effectuate the legislative purpose; while preserving, in all its integrity, the absolute right of every person to transfer his property during his lifetime, with such rights of enjoyment in the transferee, as the donor can give.

The order should be affirmed, with costs.

All concur.

Order affirmed.