---

(37 Misc. Rep. 449.)

### In re MILLER'S ESTATE.

(Surrogate's Court, Dutchess County.  March, 1902.)

TRANSFER TAX—GIFT—WHAT CONSTITUTES.

Testator, eight years before his death, transferred to a woman whom he subsequently married certain certificates of stock for her benefit. The next day, in consideration of consent to marriage, she transferred the same stock by an agreement signed by them both to him to hold as trustee and invest subject to her approval. The agreement also provided that both should enjoy the income during their joint lives, and that the trust should end at the death of either, and the survivor should take absolutely. *Held*, to constitute a gift in contemplation of the death of testator, so as to make the stock taxable on its transfer to the widow.

In the matter of the estate of Charles Miller, deceased. Decree for the appraisement of the transfer tax.

William Morgan Lee, for state comptroller.

H. H. Van Cleef (F. R. Kellogg, of counsel), for Gertrude B. Miller.

HOYSRADT, S. Charles Miller, who was a resident of Dutchess county, died April 19, 1901, and left surviving his widow, Gertrude B. Miller, and six children. His will was admitted to probate in this court June 11, 1901. A petition for the designation of an appraiser under the taxable transfer act was filed, and the former surrogate made an order designating the county treasurer, who heard the proofs of the parties and made a report fixing the aggregate value of the legacies at $538,445, and the surrogate made an order October 11, 1901, adjudging the tax at $5,424.45. This order recites that it is made subject to the right of the comptroller to claim that the 2,000 shares of stock mentioned in the second clause of the will are subject to the tax, which should be heard on motion in this court. The stock referred to is preferred stock of the Phœnix Horseshoe Company, appraised at 90.

A written agreement was entered into April 7,' 1893, between Charles Miller and Gertrude B. Tefft, which, after reciting that a marriage between the parties was about to take place, and that Mr. Miller desired to make a pecuniary provision for the benefit of his intended wife,

transfers to her the stock referred to, in consideration "of the premises." Charles Miller alone signed this agreement. On the following day, April 8, 1893, by an agreement made in duplicate and executed by Charles Miller and Gertrude B. Tefft, reciting a consideration of intended intermarriage and the sum of $1, Gertrude B. Tefft transferred the same stock to Charles Miller, his legal representatives, and assigns, forever, subject to a trust "to invest and reinvest the same in the purchase of real or personal property and to change the investments as he may in his discretion, subject to the approval of said party of the first part, think advantageous, free from any limitations or restrictions prescribed by law relative to the kind of investments allowed for trust funds and to receive, appropriate, and apply to the mutual use of the parties to these presents the interest and income arising therefrom during the joint lives of said parties." This agreement further provides that upon the death of either of the parties the trust thereby created shall cease and terminate. In case of the death of Gertrude B. Tefft, leaving Charles Miller surviving, the stock or investments representing it "shall thereupon become and be the absolute property of the party of the second part [Mr. Miller], freed from all trusts and conditions." It also provides that in case Mr. Miller dies first then the investment "shall revert to the said first party [Gertrude B. Tefft], and she hereby reserves the same in that event to herself in absolute ownership, free from all trusts and conditions whatsoever." Mr. Miller accepted the trust, and on April 8, 1893, the same day of the execution of the last agreement, but subsequent to its execution, the parties to these agreements were married.

The second clause of Mr. Miller's will reads:

"Whereas I have heretofore set apart and transferred to my wife, Gertrude Benchley Miller, 2,000 shares of the capital stock of the Phœnix Horseshoe Company, of Illinois, of the par value of $200,000, which stock I now hold under a certain deed of trust executed by my said wife to me, bearing date the 7th day of April, 1893, I do hereby reaffirm the said transfer, and do give and bequeath all the right, title, and interest I may have, if any, in and to all the property in which the same may stand invested under the said trust deed at the time of my death, to my said wife absolutely."

The counsel for the comptroller contends that the agreements should be read together, and construed as the act of Mr. Miller, placing his property in trust, with the intention of suspending possession or enjoyment by his intended wife absolutely until at or after his death, and, therefore, the transfer took effect in possession and enjoyment at the time of his death, and is taxable. The counsel for Mrs. Miller assume the position that the parties did not contemplate the second agreement when the first was made; that the second agreement was an afterthought; that Mr. Miller made an absolute transfer to his intended wife in consideration of marriage; and that Gertrude B. Tefft, before the consideration had been consummated by marriage, transferred her own property to her intended husband in trust for their joint benefit. It is also contended in her behalf that neither transfer was made in contemplation of death, and that, both being made for a valuable consideration, no transfer was made which is taxable. No evidence as to the intent of the parties is presented except such as is contained in the agreements and in the will of Charles Miller.

It is evident to me that the agreements were drawn with a view to the situation that has since arisen. The evidence of the second agreement being contemplated when the first was executed, so far as the instruments themselves furnish, is their proximity of execution; the transfer of precisely the same property for the same consideration. It may be reasonably inferred from the character of the property that Mr. Miller would be disinclined to devest himself of all authority over it, and not only lose the value of its influence to him as a stockholder, but make it possible for it to pass into the hands of those who might antagonize his interests. Irrespective of this evidence and inference, I am unable to supply any reason for the execution of the second agreement before the consideration for the first had become operative, if the second was not in contemplation when the first was executed. Certainly the lapse of a few hours between their execution, if such is the fact, will not suffice to defeat the legislative intent, to apply a tax to transfers of personal property made in contemplation of death, or intended to take effect in possession or enjoyment at or after such death. The provision in the will indicates that the testator did not intend to devest himself of the rights of ownership, possession, and enjoyment which must pass by a transfer to take it without the scope of the act. If taxation under this act could be avoided by such a transaction, and the original owner still be vested with all the rights of ownership and benefit as those granted by the second agreement, then an easy avenue of escape is provided, which I have decided not to inaugurate. While intended intermarriage, may be a sufficient consideration to remove an absolute transfer from the operation of the act, it does not, in my judgment, eliminate a transaction of this character, the agreements being construed together and the original grantor retaining substantially all the elements of ownership and participating in the benefits derived from it. The approval of his wife as to his administration of the property is, in my judgment, a limitation calculated more to serve an emergency like the present one than for her protection against any unwise handling of the stock or against imprudent investment. · The cases where transfers for valuable considerations have been held to be not taxable have no application to the present case, as they were absolute, and the grantor reserved none of the powers of ownership. The rule is well settled that two contemporaneous writings between the same parties, upon the same subject-matter, conveying the same property and for the same consideration, may be construed as one paper, and the fact that one is dated after the other can make no difference. Knowles v. Toone, 96 N. Y. 536; Treadwell v. Archer, 76 N. Y. 196; Rogers v. Smith, 47 N. Y. 324; Draper v. Snow, 20 N. Y. 331, 75 Am. Dec. 408. The use of the words "same time" means the time of the contract, whether it was consummated after one day or more of negotiation. Bank v. Hurlbut, 22 Hun, 310. The similarity of the essential parts of the two instruments and the purpose of their execution brings them within the rule of these cases. Reading the agreements together brings the case, in my judgment, within the principles applied recently by the court of appeals to cases where transfers of property have been made to trustees, and where certain elements of ownership have been retained by the

grantor.   In Re Green's Estate, 153 N. Y. 223, 47 N. E. 292, the court of appeals held that, where property was transferred to a trustee to collect the income and apply the same to grantor's use for life, and after grantor's death to distribute the property among designated remainder-men, the transfer took effect at the death of the grantor.   The trust agreement in this case reserved to the grantor the power to modify the instrument, with the consent of the trustee, and to appoint a successor in case of death.   In Re Bostwick, 160 N. Y. 489, 55 N. E. 208, the court of appeals again held that a trust deed did not constitute an absolute transfer of the grantor's property during his life, so as to exempt the transfer from taxation under the taxable transfer act, where the grantor reserved power to direct payment of income to himself during life, or to such other persons than the beneficiaries as he might designate in writing; to withdraw the securities constituting the trust fund and substitute others; to alter and amend the trust and add property thereto, and to terminate the trust on notice.   In the decision in this case the court says the limit was reached in the Masury Case, 159 N. Y. 532, 53 N. E. 1127, and that the court may have gone too far in generally affirming that decision, and if the trust transfers were held to be without the operation of the act too dangerous a latitude of action would be permitted to persons who desired to evade its provisions by some technical transfer which would still leave the substantial rights of ownership in the donor.

There is not in this case, according to my view, evidence of an intention to transfer, at the date of the transfer agreements, the absolute right and enjoyment which a completed gift carries, as the cases hold there should be, but that the gift or transfer was made as an assurance to the intended wife that she would be amply provided for at the death of the grantor if she survived him.   His death was the event which made the transfer complete and effective, and the clause in his will indicates to me that he likewise regarded it.   It is, therefore, my opinion that the gift was made in contemplation of the death of the grantor, and was not intended to take effect in possession or enjoyment until at or after his death.

The fund not included in the report of the appraiser, consisting of the 2,000 shares of stock referred to, or its equivalent, is subject to a tax of 1 per cent.

Decreed accordingly.