Matter of the Appraisal of the Estate of SHERMAN VOORHEES, Deceased, under the Acts in Relation to the Taxable Transfers of Property.

(Surrogate's Court, Chemung County, May, 1918.)

Assignment — of policy of life insurance — trusts — wills — transfer tax.

> Where decedent, upon making an absolute assignment of a policy of life insurance which in the event of his death was

Surrogate's Court, Chemung County, May, 1918.   [Vol. 103.

payable to his executors, administrators or assigns, and which reserved to him the right at any time to change the beneficiary and the form of the policy, entered into a trust agreement with the assignee, whereby the policy on becoming a claim was to be paid to the assignee as trustee for a certain person, and by said agreement decedent also reserved the right to collect and receive the surplus apportioned to the policy while it was in force and the right to revoke and cancel the trust agreement by an instrument of revocation to be executed by him and lodged with the trustee whereupon the trustee was to release all its right, title and interest in the policy which it had acquired by virtue of the trust agreement, the policy is not subject to a transfer tax; the beneficiary thereunder did not obtain title thereto either under decedent's will or by the laws of the state but through the assignment and the trust agreement.

APPEAL taken by the state comptroller from an order confirming the report of the appraiser fixing and assessing the transfer tax.

Wallace W. Seeley, for state comptroller.

Stanchfield, Lovell, Falck & Sayles (Henry B. Collin of counsel), for the executor and trustee.

SWARTWOOD, S.   The report of the appraiser was filed in the office of the surrogate on the 8th day of May, 1917, and a *pro forma* order confirming the same and fixing the transfer tax therein was entered on the 9th day of May, 1917.   From that order an appeal has been taken and the question raised as to whether ten separate insurance policies issued to the deceased in his lifetime by the Provident Life and Trust Company of Philadelphia, aggregating $43,000, are assets of the estate and taxable.   One policy for $3,000 was dated September 26, 1905; four policies for $2,500 each were dated September 26, 1907; three policies for $5,000 each were dated August 3, 1909; and two policies, one for $10,000 and one for $5,000, were dated May 5, 1914. All of these policies were payable in the event of death

to the insured's executors, administrators or assigns. The first eight policies, above mentioned, were assigned on January 2, 1912, by an absolute assignment to the Provident Life and Trust Company. The last two mentioned were assigned by an absolute assignment to the Provident Life and Trust Company on the 29th day of July, 1914. The insured died a resident of the city of Elmira, N. Y., on May 1, 1915. By the terms of practically all of the policies the insured reserved the right at any time to change the beneficiary. He also reserved the right to change the form of the policy. On the same date that the policies were assigned the insured entered into an agreement or deed of trust with the Provident Life and Trust Company, whereby the policies on becoming a claim by his death were to be paid to the company as trustee of several different trusts for the benefit of several persons on various terms and conditions.

By the third paragraph of each of the trust agreements the insured reserved the right to collect and receive the surplus apportioned to each policy during the time for which they should be in force. The record shows that this surplus is the amount left in the company's hands at the end of each year, after having deducted from the premiums paid by the insured the cost of carrying the insurance, according to the terms of the policies. It is in nowise, therefore, the reservation to the insured of the life use of any fund deposited with the trustee under the trust agreements, but is simply the change coming back to him annually on paying for his insurance.

By the 4th clause of each one of the trust agreements the insured reserved the right to revoke and annul the deed of trust by an instrument of revocation to be executed by him and lodged with the trustee, whereupon the trustee should release all right, title and

Surrogate's Court, Chemung County, May, 1918. [Vol. 103.

interest in and to the said policies which it had acquired by virtue of the deed of trust or the assignment.

It is contended by the representative of the state comptroller that this reservation by the insured of the right to revoke and annul the deed of trust brings the case squarely within the decision of *Matter of Bostwick,* 160 N. Y. 489. The executor and trustee contend that, if this clause in the deed of trust has any bearing on the matter whatsoever, then the case falls squarely within the decision of *Matter of Masury,* 159 N. Y. 532. In both the *Masury* and *Bostwick* cases actual property was delivered to the trustee. In *Matter of Bostwick* the donor of the trust also reserved the right to direct the payment of the income during his life and the right to amend the deed of trust at any time; he therefore, in effect, retained both the possession and enjoyment of the trust fund until his death.

The question raised here is quite different for the reason that life insurance policies are a very different form of property than was the subject of the trusts in both the *Masury* and *Bostwick* cases. As was stated by the court in *Matter of Parsons,* 117 App. Div. 323: "A policy of insurance differs from other contracts, as it is not ordinarily intended to bring a benefit to the insured himself but to others after his death."

Six of these policies were ten-year renewable term policies, the remaining four were ordinary life policies. To be sure, the insured could under the 4th clause of the trust deed repossess himself of the policies, but they were of no value to him; he could derive no benefit therefrom during his lifetime; and, if he should at any time fail to pay the premiums as stipulated, the six term policies would lapse and be of no value whatsoever and the four remaining ordinary policies would have but a very little extended insurance or paid-up value.

There are many distinguishing features between insurance policies and actual property, like bonds, mortgages and stocks, such as were delivered to the trustee under the trust agreements in the *Masury* and *Bostwick cases, supra,* but further discussion along that line would seem to be unnecessary.    There is another fact, however, that should be borne in mind and that is that these policies of insurance were all of them, together with the assignments and the deeds of trust, delivered to the trustee at the city of Philadelphia, in the state of Pennsylvania, the donor of the trust being there present at the time of the delivery and the trust deed establishes the situs of the trust in the state of Pennsylvania, and the avails of the policies were paid to the trustee in the city of Philadelphia and were never in the hands of the executor of the will in the state of New York.

It seems to have been the desire of the insured to carry insurance for the benefit of his wife and child and other members of his family, but that the avails of the policies should not be paid to them, but held in trust.  Each of the trust agreements comprises several typewritten pages.  It will readily be seen that under any standard form of policy all of these terms and conditions of payment could not be included, and it may have been for that reason that the policies were made payable to the insured's executors, administrators or assigns, and then assigned to the company and the agreements entered into establishing the trust for these different beneficiaries.

It is admitted by counsel for the state comptroller that an insurance policy payable to a designated beneficiary, but reserving the right to the insured to change the beneficiary, does not fall within the provisions of the Transfer Tax Act on the policy becoming a claim by death.  It is difficult to distinguish such a policy

from the policies involved in this case. The policies reserve the right to the insured to change the beneficiary. Unless the insured reserved the right in the trust deed to revoke the trust, he would lose the benefit of that clause in his policy reserving to him the right to change the beneficiary. It was necessary that the revocation clause should be put in the trust agreement to the end that it should harmonize with the policies. This case would seem to fall within the decision in *Matter of Elting,* 78 Misc. Rep. 692, in which it is held that a policy of insurance on the life of a testator in terms payable to his executors, administrators or assigns for the express benefit of testator's wife and surviving children is not subject to a transfer tax. That is evidently what the testator under the policies in question intended to accomplish by the assignment to the trustee and the deed of trust. The same principle was also involved in the case of *Matter of Van Dermoor,* 42 Hun, 326.

My conclusion, therefore, is that the deceased was not possessed of the policies at the time of his death and that his beneficiaries did not obtain title to them through his will or by the laws of the state of New York, but through the assignments, that are absolute, and the trust deeds describing the trusts erected by the insured and providing for the manner of the payment of the avails of the policies when they should become a claim by death. The insured could have changed the beneficiaries as often as he saw fit under the revocation clause in the trust agreement and the clause in the policies giving him that right, and the fact that he reserved that right does not bring the case within the decision of *Matter of Bostwick, supra.*

Decreed accordingly.