Matter of the Estate of ANDREAS M. MILLER, Deceased.

(Surrogate's Court, New York County, November, 1919.)

Transfer tax — what subject to — deed of trust — decedents' estates — non-residents — charitable institutions — municipal corporations not entitled to exemption under section 221 of the Tax Law.

Where decedent several years prior to his death, by deeds of trust reserving to himself the power of revocation, transferred a large amount of property, such transfers are subject to a transfer tax, it appearing that they were made to take effect in possession and enjoyment at the death of the decedent.

Surrogate's Court, New York County, November, 1919.   [Vol. 109.

A municipal corporation does not come within the exemption provided for in section 221 of the Tax Law and the remainder interest of a city under one of the trust deeds is subject to a transfer tax.

A son of decedent executed a deed of trust by which the income of the trust fund was given to decedent for life and on his death to the settlor's mother for life, and on her death the principal to the settlor, if living, and if not to his issue, and if there were no issue to designated charitable institutions.   The son who predeceased his father was at the time of his death a non-resident of this state.   *Held,* that such transfer was a disposition by the father of his own property and that as the income therefrom was to be paid to him during his life, the transfer was taxable.

APPEALS from order fixing the transfer tax.

Stewart & Shearer (McCready Sykes and George L. Shearer, of counsel), for executor and for the city of Duluth, Minn.

Lafayette B. Gleason (Schuyler C. Carlton, of counsel), for state comptroller.

COHALAN, S.   Appeals have been taken by the United States Trust Company, as executor of the last will and testament of the above-named decedent, by the city of Duluth and by the state comptroller, respectively, from the report of the transfer tax appraiser and the order fixing the tax herein.

The decedent died a resident of this state on May 22, 1917.   He left a net estate of $77,963.45.   There is included as taxable, in the report of the transfer tax appraiser, additional property of the value of over $1,500,000 transferred by three deeds of trust made by decedent in his lifetime, and dated, respectively, December 26, 1914, January 5, 1917, and January 9, 1917.   The executor appeals on the ground that these transfers were not taxable.   The decedent also trans-

ferred by deed of trust, property of the value of about half a million dollars, which is not included among the taxable assets of his estate, and as to which no appeal is taken by the state comptroller. A trust deed dated March 11, 1907, of property of the value of $408,000 was executed by Athol M. Miller, son of decedent. The state comptroller appeals on the ground that the appraiser has not reported the transfer as taxable, claiming that the securities which formed the corpus of the trust were the property of decedent, and that the transfer was in legal effect the decedent's act. The city of Duluth appeals on the ground that the trust fund of $595,250, in which it has the remainder interest under the trust deed of January 5, 1917, is exempt from taxation.

The value of the property included in all the trust deeds mentioned above is nearly $2,500,000. The executor contends that the only taxable property of the decedent is the net estate of which he died possessed, $77,963.45.

The deeds, dated respectively December 26, 1914, and January 9, 1917, have the following provision, which is identical in the two instruments:

" The party of the first part reserves the right at any time during his lifetime, by an instrument in writing under his hand and seal, and duly acknowledged so as to authorize it to be recorded, to revoke this trust deed and to terminate the trust hereby created, and thereupon to receive from the party of the second part all the trust property, principal and income, then in its hands."

It is contended by the state comptroller that this reservation to the grantor in the two deeds of the power of revocation subjects the transfers to the operation of the statute which provides for their taxation when made in contemplation of death or intended

to take effect in possession or enjoyment at death. The learned counsel for the executor relies on the decision of the Court of Appeals in *Matter of Masury,* 159 N. Y. 532, affg., without opinion, 28 App. Div. 580, in support of the claim that the property transferred by the trust deed is not taxable.

The question of the liability to the transfer tax of property conveyed by deeds of trust was again presented for determination to the Court of Appeals very soon after its affirmance of the decision of the Appellate Division in *Matter of Masury, supra.* In the case referred to (*Matter of Bostwick,* 160 N. Y. 489) the transfer was held taxable. In the *Masury* case the power to revoke the trust was alone reserved. In *Matter of Bostwick* the donor retained the right to alter or amend the provisions of the trust deed, to withdraw or exchange the securities which made up the fund and to control their disposition and sale. The decision of the court in the *Masury* case is discussed at considerable length in the *Bostwick* case, in which Judge Gray, writing the opinion of the court, says (p. 493):

" The affirmance of the decision in the *Masury* case may seem to have committed this court to views which support the contention now made in behalf of these appellants, but, if that be so, it is an erroneous inference from that decision.

" I think that we may have gone too far in generally affirming the *Masury* decision; certainly the limit was then reached, beyond which the courts could not go without emasculating the provisions of the statute. We thought there was some reason in the facts of the *Masury* case for finding an intention in the donor to make an absolute transfer of property during his life, which the mere reservation of a power to revoke was, of itself, insufficient to negative."

There are no facts in the present proceeding, as there evidently were in the *Masury* case, which would show that the donor intended to make an absolute transfer of his property, notwithstanding his reservation of the power of revocation. The gift could not be absolute and revocable at the same time. The liability to the transfer tax of the property set over by the two instruments now under consideration is governed by the decision in *Matter of Bostwick, supra.* Neither in the present nor in the *Bostwick* case was it provided by the trust deed that any part of the principal or income from the fund was to be paid to the donor in his lifetime, so that the only effect of his death, as far as the interests of the beneficiaries of the trusts were concerned, was to remove the possibility of interference by the donor and to make secure their enjoyment of his bounty. It was necessarily by reason of this termination by the death of the donor of the power to affect the enjoyment of the trust by the beneficiaries, and on this ground alone, that the court held in the *Bostwick* case that the donor intended that the transfer should take effect at his death. It cannot be asserted with reason that the reservation of the power to alter or amend retained by Bostwick is to be deemed an indication by him of an intention that the gift was to take effect at death, while the reservation by the donor of the power of revocation in the trust deeds now before us is not to be so considered. The execution of a simple instrument by Mr. Miller could deprive the beneficiaries of all interest in the fund, and it was not until he died that their possession was complete and secure. The trust deed was " just as capable of revocation as a will would have been." *Matter of Dana Co.,* 216 N. Y. 461. I am of the opinion that the transfers by the trust deeds, dated, respectively, December 26,

1914, and January 9, 1917, were made to take effect in possession and enjoyment at death of the decedent.

By the deed, dated January 5, 1917, decedent transferred to the United States Trust Company, as trustee, securities of the value of somewhat less than $600,000 in trust to pay the income to the decedent during his life and at his death '' to transfer and pay over said securities and property to the City of Duluth, Minnesota, for the establishment of a free and public Hospital and Dispensary in a cheerful and convenient location within the City for secular use and benefit of worthy sick and helpless poor without distinction of sex, color, creed or nationality who are not afflicted with any loathsome or contagious disease.''

The right to revoke the trust and to regain the ownership of the property was reserved by the decedent. For this reason, and also because of the life interest retained by the donor in the fund, the principal is taxable as a transfer to take effect at death (*Matter of Keeney,* 194 N. Y. 281), unless the city of Duluth comes under the classification of beneficiaries, transfers to which or to whom are specifically exempted from taxation by the statute.

Section 221 of the Tax Law provides: ''Any property devised or bequeathed * * * to any religious, educational, charitable, missionary, benevolent, hospital or infirmary corporation, wherever incorporated * * * shall be exempted from and not subject to the provision of this article.'' Under this section the exemption is to be determined by the identity of the beneficiary and not by the purpose of the transfer. *Matter of Palmer,* 33 App. Div. 307.

The city of Duluth is a municipal corporation and not a hospital corporation and does not come within the exemption provided for in section 221. The transfer to it by the deed of trust, dated January 5, 1917, is taxable.

The deed of Athol M. Miller, the son of decedent, to the United States Trust Company as trustee gives the income from the trust fund of $408,000 to the decedent for life and on his death to the grantor's mother for life and on her death to the grantor, if living, and if not living to the grantor's issue, and if no issue to designated charitable institutions. The son, who predeceased his father, was at the time of his death a nonresident of this state.

The facts bearing upon the execution of this deed were developed by the testimony of an officer of the Van Norden Trust Company, the trustee named in the trust deed, in an action brought in the Supreme Court involving the right to the accrued income under the deed of trust, in which the Equitable Trust Company was the plaintiff and Annie E. Miller, the widow of decedent, the defendant. The testimony, a transcript of which was introduced in evidence before the transfer tax appraiser by stipulation of the parties, is in part as follows:

" Q. Did Mr. Miller consult or confer with you about the creation of any trust in 1907 ?   A. The father or son are you talking about?

" Q. Mr. Andreas M. Miller, the father.   A. Yes.

" Q. Did he tell you what he desired to do, what he desired to accomplish ?   A. Yes.

" Q. What did he tell you ?   A. He said that he wished to arrange for a distribution of his property while he was alive so that there would be no lawsuits about it after he died.

" Q. And were trust agreements executed at that time by Mr. Miller ?   A. Yes, I think he executed one himself, if I remember it, and one through his son.   It was executed by the son; I mean the son.

" Q. I show you plaintiff's Exhibit A of this date,

18

and ask you if you have ever seen that document before? A. Yes.

" Q. Did Mr. Miller consult you or concur with you about the execution of that document? A. He did.

" Q. That document is executed by the son, is it not? A. Yes.

" Q. Were the securities mentioned in that deed of trust placed in your hands or in the hands of the trust company, to your knowledge? A. Yes.

" Q. By whom? A. By the son — when he executed that trust.

" Q. Did Mr. Miller or the son inform you whose securities they were that were being placed there? A. Yes; they were very positive about that. * * *

" The Court: You may tell what they said.

"A. The father said that he had given to his son certain securities absolutely without any qualification or condition, that they were his absolutely. And he said that the son would be in the next day to turn over those securities annexed to the certificate of trust. And the son came in and delivered the securities to us, and we received them as the property of the son.

" Q. What had Mr. Andreas M. Miller previously said to you about the disposition of his property in this way in addition to what you have said? A. Well, he said that he wanted the income to go to him during his life because he thought that was safer; if he gave it to them and they supported him they might get tired of supporting him. He was a man of considerable humor. And he said, ' I want to have the income while I am alive, but when I am through with it I want it to go to the people for whom it was intended.'

" Q. Did he mention his wife and his desire to provide for her, anything in that connection? A. Yes, he said very specifically that he was providing for his wife, that he wanted us to get the — that this was a

trust practically for her, but he wanted the income reserved for himself while he lived, but that on his death he wanted everything to go to her that he personally did not get."

The testimony clearly reveals the fact that the son, whose possession of the securities was limited to the brief space of a day, was acting as the mere medium for the disposition of property belonging to his father. The transaction is accurately described by the witness above quoted in stating that the decedent executed the instrument " through his son." Even the right to revoke the trust is expressly given to the father as well as reserved to the son in the deed. The transfer of the securities was as much the act of decedent as if he had been named as the grantor and had signed the instrument.

In writing the opinion of the court in *Matter of Keeney, supra,* Chief Judge Cullen said (p. 287) : " It is true that an ingenious mind may devise other means of avoiding an inheritance tax, but the one commonly used is a transfer, with reservation of a life estate." An illustration of the operation of the " ingenious mind " is afforded by the present instance. If it were not for the disclosure of the facts in the record now before the court, the device might have been successfully applied.

The scheme by which this evasion of the Tax Law was attempted would, if countenanced, unquestionably be the one most frequently resorted to as affording the simplest method of avoiding the payment of the tax, the only requisite for its accomplishment being an absolutely reliable intermediary who is a non-resident of this state. The transfer by the deed of trust dated March 11, 1907, was a disposition by the decedent of his own property. As the income from the fund was to be paid to the decedent during his life, the transfer

is taxable. *Matter of Keeney, supra.* The order fixing the transfer tax is reversed, and the report is remitted to the appraiser for the purpose of including the property transferred by the deed of trust dated March 11, 1907, among the taxable assets of the estate of decedent.

Order reversed.