In the Matter of the Transfer Tax upon the Estate of EVA S. COCHRANE, Deceased.

(Surrogate's Court, Westchester County, November, 1921.)

Transfer tax — strict construction of statute — where a tentative trust is not revoked upon donor's death a presumption arises that an absolute trust was created and the life estate created thereby is not subject to a transfer tax — Laws of 1905, chap. 368, § 220, subd. 3.

The transfer tax is the tax on the privilege granted by the state to an individual to succeed to the property of a deceased person; and a statute imposing such a tax must be strictly constructed against the state and upon it lies the burden of proving the tax.

By a trust deed expressly reserving to the grantor at her will and pleasure, by will or other written instrument signed

by her and delivered to the other party to the trust deed, full power to revoke it and all the trusts, powers and rights thereby created, a tentative trust is created, but upon the donor's death without having revoked the trust deed, the presumption arises that an absolute trust was created.

Such a deed constitutes a transfer of a life estate in property provided for in the deed, and in the absence of extrinsic evidence showing that the deed was intended to take effect after the donor's death, it must be held that, within the meaning of the statute (Laws of 1905, chap. 368, § 220, subd. 3) in force at the death of the donor, the deed was intended to and in fact did take effect in possession and enjoyment at its date and the life estate created thereby is not subject to a transfer tax.

*Matter of Miller*, 109 Misc. Rep. 267, not followed.

APPEAL from a *pro forma* order assessing a tax.

Maitland F. Griggs, for executors, appellants.

Francis A. Winslow, for state tax commission.

SLATER, S. This is an appeal from a *pro forma* order dated May 16, 1921, assessing a tax, based on the supplemental report of the appraiser. The order appealed from deals with the transfers affected by six trust deeds created in the years 1902 and 1903 by the decedent for the benefit of five friends. *First.* Two trusts of $25,000 each, created for the benefit of Augustine Haughton, wife of Reverend James Haughton, by two deeds dated October 10, 1902. *Second.* The trust of $25,000 created for the benefit of Maria Haughton Spaeth by deed dated October 10, 1902. *Third.* The trust of $25,000 created for the benefit of Mary Bowne Kellinger, by deed dated October 10, 1902. *Fourth.* The trust of $28,000 created for the benefit of Martha Punchard Baldwin, by deed dated October 15, 1902. *Fifth.* The trust of $65,000 created for the benefit of Mrs. Sarah E. Baldwin, the widow

Surrogate's Court, Westchester County, November, 1921.    [Vol. 117.

of Ebenezer Baldwin, deceased, the uncle of the donor, by deed dated May 21, 1903.  *Sixth.* The trust of $20,000 created for the benefit of Elizabeth Paddock Getty, by deed dated May 21, 1903.

In the several deeds of trust, certain named securities made up the capital of the fund.  Six years elapsed between the date of the deeds and when the decedent died on February 3, 1909.  It was not asserted that the donor was in ill health in 1903.  All of the beneficiaries are alive, except Augustine Haughton, who died June 17, 1920.

In the case of the trust deed for the benefit of Elizabeth P. Getty, it directed the trustee upon the death of the life beneficiary to pay over the corpus of the trust to the children of the life beneficiary, and in case there should be no such child, then to pay over to the sisters of the said life beneficiary, and, if no sisters shall survive, then to pay over the corpus to the next of kin of the said life beneficiary.  In the case of the other deeds, with the exception of the one creating the trust for Martha P. Baldwin, the trustees are directed upon the death of the life beneficiary to pay the corpus to " the party of the first part," the decedent herein, or " if she be not then living, to her executors or administrators."  In the deed for the benefit of Martha P. Baldwin, upon the death of the life beneficiary, the direction is to pay the corpus to the "party of the first part, if she then be living, or, if dead, to such person as the said party of the first part shall designate by her instrument in writing, or by her last will and testament, or in default of said designation to the residuary legatees mentioned in her will, or if she died intestate, to her next of kin."  In each of the deeds, there is a right reserved that " no sale of said bonds, or any of them, or of any securities in which the capital of the said trust fund shall be at any time

invested, or reinvestment of the trust funds shall be made during the lifetime of the party of the first part without her written consent, provided she shall be competent to give the same," and in each of the deeds, there are identical clauses of revocation in these words: " The party of the first part expressly reserves to herself, full power to revoke this instrument and all the trusts, powers and rights hereby created and herein set forth, at her will and pleasure and at any time by will, or by instrument in writing signed by her and delivered to the party of the second part."

The fundamental question presented is whether the voluntary settlement of the life estates made by the trust deeds should be considered as transfers which did not become absolute until the death of the testator, because they reserved the power to terminate the trust. No question arises as to the remainders, except as to the Getty trust. It is conceded that all other remainders are taxable. It is claimed by the state that the reserved power of revocation in each of the several deeds shows an intention not to make completed and irrevocable gifts *inter vivos* and, therefore, they are taxable under the Transfer Tax Law.

A tax is imposed by force of chapter 368 of the Laws of 1905 relating to taxable transfers in operation at the date of death of decedent in these words: Section 220, "A tax shall be and is hereby imposed upon the *transfer* of * * * *property,* * * * or of *any interest therein,* or *income therefrom,* in *trust or* otherwise, to persons * * * in the following cases * * *." Subdivision 3. " When the transfer is of property made by * * * by deed, grant, bargain, sale or gift * * * *intended to take effect in possession or enjoyment* at or after such death."

Section 242 defines " property " as used in the Tax

Law to mean the property, or interest passing, **or** transferred to donees, and not as the property, **or** interest of * * * the donor. The word " transfer * * * shall be taken to include the passing of property or any interest therein in the possession **or** enjoyment, present or future, by * * * grant, **deed,** bargain, sale or gift * * *.''

The state contends that these deeds are gifts to take *effect at death.* It is true that gifts *inter vivos* must contain the element of finality. The gift must operate immediately, and irrevocably. *Ridden* v. *Thrall,* 125 N. Y. 572. But, the law speaks of transfers of property not alone by gift, but by deed, grant, bargain, sale. It is not in express terms limited in its effect to any particular kind of gifts, but is unrestricted. These voluntary settlements, or contracts created by deed, without valuable consideration passing, may well be, and are tentative trusts, so that the passing or transfer of the beneficial interest and enjoyment need not be claimed as a gift *inter vivos* and subject to all its essential elements. The gifts were of such a character as to immediately pass the title to the property to the trustee and the enjoyment to the donees. The gift was unconditional in their possession and not subject to control or domination of the donor. The case fails to disclose facts sufficient to found a conclusion upon, that they were made in bad faith, or with the intent of evading the transfer tax. However these instruments, or settlements, may be classed, they fall within the kind of transfers mentioned in, and are within, the meaning and intent of the act, which, if intended to take effect in possession or enjoyment before death, are not taxable.

Of the several cases decided by the Court of Appeals involving questions of reserved powers, none appear

to pass directly upon the question in the instant case. At the outset we are met with the claim of opposing counsel that all the cases in the Court of Appeals upon the subject sustain their position. The real difficulty, however, is in navigating between the sure channels of the law as laid down and the shoals of dictum.

The transfer tax is a tax on the privilege granted by the state to an individual to succeed to the property of a deceased person. *Matter of White*, 208 N. Y. 64; *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283.

The law imposing the tax must be strictly construed against the government and favorable to the taxpayer. *Matter of Vassar*, 127 N. Y. 1, 12; *Matter of Bronson*, 150 id. 1. If a doubt exists whether a tax is to be levied, or not, it should be resolved against the state. *Matter of Wiemann*, 179 N. Y. Supp. 190. The state has the burden of proving the tax. *Matter of Miller*, 77 App. Div. 473. Having in mind these principles, let us proceed.

*Matter of Masury*, 28 App. Div. 580; affd., without opinion, 159 N. Y. 532, is claimed to help the contention of each party to this contest. In one of the trust deeds therein the donor *reserved the avails during his lifetime* and the court held that it did not vest the beneficiary with any right of property until the death of the donor, and that it fell within the provisions of the taxable transfer law. As to the other deeds of trust, the court concluded that they were not liable to taxation because the *donor had divested* himself of all title upon their execution in so far as the *beneficial* use of the same was involved and vesting the funds at the date thereof, in no wise contingent upon the death of the grantor, in the beneficiary. It seems that another reason for deciding these latter trust deeds to be non-taxable was the fact that the corpus of the

Surrogate's Court, Westchester County, November, 1921.    [Vol. **117.**

trust was to vest in the beneficiary on a certain fixed date. In *Matter of Bostwick,* 160 N. Y. 489, the court, with reference to the *Masury* case, said that " * * * we may have gone too far in generally affirming the *Masury* decision;" and further said: " * * * certainly the limit was then reached, beyond which the courts could not go without emasculating the provisions of the statute. We thought there was some reason in the facts of the *Masury* case for finding an intention in the donor to make an absolute transfer of property during his life, which the mere reservation of a power to revoke was, of itself, insufficient to negative." Therefore, the *Masury* decision may be said to be law for its own particular facts. However, Mr. Justice Woodward, in writing the opinion in the *Masury* case in the Appellate Division, used some language indicating the belief of the justice and the court that when a trust deed vested the immediate use of the income of a fund in the beneficiary, the fund is not taxable as a transfer intended to take effect at the death of the grantor. In his opinion, at page 583, upon this point, he said: " * * * we are asked to determine that, because of the fact that the grantor might have revoked the trusts at any time during his lifetime, the rights of the appellants in the trust funds did not become absolute until after the death of the grantor, and that, therefore, the property passed into the possession of the appellants, or their rights became absolute upon the death of the grantor, and it is subject to the tax * * *." "This," the court says, " does not, however, follow. If it should be determined that the gift did not become absolute until the possibility of its annulment ceased, upon the death of the grantor, it would still be necessary to show that the *gift was ' intended to take effect, in possession or enjoyment, at or after such death;' and to determine the*

*intention of the donor, we must look, not to the argu-
ment of the respondent, but to the language of the
deeds of trust, the relations which existed between the
parties, and the fact of the beneficial enjoyment of the
avails of the trust."*

The trust deeds in the *Masury* case each reserved
the right to revoke and annul the same during the life-
time of the maker. No other right was reserved.
Referring to this right, at page 585, the court said:
" There is nothing to indicate that the grantor had
any intention of making use of this right except to
protect the beneficiary should such action become nec-
essary during his lifetime; and the fact that he did
not make use of it up to the time of his death precludes
the presumption that he would have done so at any
time. At least, the presumption cannot be raised to
show an intention directly contrary * * *." The
*Masury* opinion by Mr. Justice Woodward was adopted
as its own by the Court of Appeals.

Surrogate Crosby of Chautauqua county, in *Matter
of Patterson,* 127 N. Y. Supp. 284, speaking of the
*Masury* decision and its legal effect, says: " All that
the court in the Masury Case decided was that the
reservation of the power of revocation at any time
during life did not mark the transfer as one intended
to take effect at death. The court was clearly right."

In *Matter of Bostwick, supra,* the facts were these:
The donor had made deeds of trust, in some reserving
the payment of the income to himself, or to such other
persons as he might designate; the power to *alter,* or
*amend* the trust; to withdraw, or to exchange any
securities; and to control the acts of the trustee in
disposing of the securities, and the right to terminate
the same at any time. They are more extensive
reserved powers and are entirely different from the
right reserved in the instant case. The court held

that all these reserved powers indicated an intention on the donor's part to retain a dominion over the properties transferred, and did not consider that the donor intended to vest the absolute right to present enjoyment in the beneficiaries. He retained practical control of the trust property and left the question of its beneficial enjoyment and eventual possession open until his death. The court in this case referred to the *Masury* case, and said: " The powers reserved in those deeds to revoke, or to annul, the trust during the donor's lifetime were considered, of themselves, not *to affect the present vesting of the property, or to make its beneficial enjoyment contingent upon the death of the donor* \* \* \*. The reserved power to revoke would enable him, of course, to put an end to the trust; but that was not enough to effect the possession of the trustee, or the beneficial enjoyment of the object of the donor's bounty, while the trust was in force, and such a power carried with it no control over the property, or its management." The court further said: " In the present case, however, (Bostwick) the donor has reserved, during his life, such numerous and extensive powers \* \* \* as to preclude the legitimate inference of an intention on his part that they were to take effect in absolute possession or enjoyment before his death."

*Matter of Bowers,* 195 App. Div. 548; affd., 231 N. Y. 613, without opinion, is the recent case upon the subject. There the donor in certain deeds of trust had made two reservations. *First,* the right to approve of the reinvestments of stock; *second,* the power to *alter, or amend,* or extend all, or any of the terms of the instrument with the *consent* of either one of the parties of the second part. Mr. Justice Page, writing for the Appellate Division, said as to the first reservation, which is similar to one of the reservations in

Misc.]    Surrogate's Court, Westchester County, November, 1921.

the instant case, that there is nothing in this clause to qualify or cut down the absolute character of the gift, and that the provision is not for the benefit of the grantor, but insures the preservation of the fund in the interest of the beneficiary of the trust. As to the other reservation, the court, while doubtful, was willing to assume that the right to " alter, amend or extend " permitted the donor to revoke the deed, and said that " * * * he (the donor) did not exercise that right in his lifetime, and as was said in *Matter of Masury* (28 App. Div. 584; affd., 159 N. Y. 532) : ' If we are to get at the intention of the grantor from the language used in raising the trust, then there can be no doubt that John W. Masury intended this deed of trust to become of full effect whether he lived or died, and the detail with which he provided for the disposal of the property in the event of the death of his grandson precludes the idea that he had any other motive in retaining the right to annul the deed than a prudent caution would suggest. It had no bearing upon the intention. * * * There is nothing to indicate that the grantor had any intention of making use of this right except to protect the beneficiary should such action become necessary during his lifetime; and the fact that he did not make use of it up to the time of his death precludes the presumption that he would have done so at any time. At least the presumption cannot be raised to show an intention directly contrary to that expressed in the deed of trust.' "

Judge O'Brien, in *Matter of Green,* 153 N. Y. 223, 227, in holding that the remainders transferred were intended to take effect at or after the death of the donor, said: " Until her death, (meaning the donor) they (meaning the nieces) had no actual possession, or right to the possession, of the property. Since they could not receive any part of the principal or *of the*

Surrogate's Court, Westchester County, November, 1921.   [Vol. 117.

*income* till after her death, their right of enjoyment was postponed till the happening of that event. Whatever interest they may have had before, the right to the possession and enjoyment depended upon the death of the donor.'' This language clearly implies that the court had in mind and gave particular consideration to the possession of the property and the enjoyment of the income thereof.

Each case must be determined by its own peculiar facts. The aim of the law is to reach property, where by reasonable deduction the donor intended to retain its enjoyment.

The important words in the taxable transfer law are the words '' *intended to take effect in possession, or enjoyment.*'' What did the donor intend as to the possession or the enjoyment of the avails of the gift in the instant case? Did he *intend* the gifts to take effect in possession or enjoyment at or after death? Did the donees have such possession or enjoyment from the creation of the trusts? Possession of the securities passed to the trustee, it had the legal title, managed and controlled the property, and the enjoyment, which means the use, passed to the beneficiaries. They have had the yield of the securities since the creation of the trusts. The deeds were unrevoked at the time of the donor's death. Neither did the will of the donor revoke them.

The courts have decided what constitutes '' possession or enjoyment '' by holding that the retention by the grantor of the *income* of a trust fund is so distinctly a characteristic of possession and enjoyment of an estate as to constitute convincing *evidence of an intent,* that the deed shall not '' take effect in enjoyment '' until the grantor's death. Consequently, the avails of a trust fund in a donee, without reserving numerous or extensive powers or con-

Misc.]   Surrogate's Court, Westchester County, November, 1921.

trol in the donor constitute enjoyment and is presumptive evidence of the intent of the donor. Under our deeds of trust the possession and avails passed to the donee. One of the tests to be applied to ascertain the donor's intention is, who gets the possession or enjoyment of the funds? *Matter of Green,* 153 N. Y. 223; *Matter of Masury, supra,* as to one deed of trust; *Matter of Dana Co.,* 215 N. Y. 461; 214 id. 710.

It is significant, that in every reported case in the Court of Appeals where the gift was taxed, the enjoyment of the income was retained by the donor.

The right to these life interests took place when the deeds were executed and delivered, not at death, because the donor had parted with a life estate in the funds; both possession and enjoyment passed; he retained no control; no further beneficial interest passed to the beneficiaries at the death of the donor. Nothing was expectant. The right was vested in possession and enjoyment. Complete possession and enjoyment was intended, and it existed. No greater beneficial enjoyment was had after Mrs. Cochrane died. Her death only made the enjoyment absolute. The donor did not reserve an estate of a beneficial character. Within the meaning of the Tax Law, the intent of the donor shall be ascertained by what he does with the possession or enjoyment of the funds of the trust. The law assumes to tax a life estate given at death. Such an estate is the right to enjoy property for the life of the donee, or of some other named person. If the enjoyment of it commences at the death of the donor, it is taxable. If, however, it is received, possessed and enjoyed before the donor's death, and not given in contemplation of death, it is not taxable.

The donor created a tentative trust, revocable,

under its terms, and upon the donor's death, without revocation, the presumption arises that an absolute trust was created. *Matter of Totten,* 179 N. Y. 112. It was an estate " vested in possession " as distinguished from one " vested in interest." An estate is vested in possession when there exists a right of present enjoyment. *Butler* v. *Sherwood,* 114 Misc. Rep. 483; *Matter of U. S. Trust Co.,* 117 App. Div. 178.

This exact question was involved, and considered in *Matter of Miller,* 109 Misc. Rep. 267. In that case the donor reserved only the right to *revoke the trust,* and Surrogate Cohalan decided that the trust deed fell within the terms of the taxable transfer act and was taxable, basing his conclusions upon the decision in *Matter of Bostwick, supra,* and *Matter of Dana Co.,* 215 N. Y. 461. I am unable to agree with the learned surrogate of New York county.

The power to *amend or alter* and control as reserved in the *Bostwick* case withholds the right to re-create, re-establish, and retain those extensive and numerous powers, which the *Bostwick* decision said were inconsistent with possession or enjoyment in the donee. These powers clothe the donor with the right to make practically a new deed of trust, with unlimited reserved power, including the enjoyment of the income. The power to revoke goes to the destruction of the trust only, the re-vesting of the property in the donor. It is a right to resume the ownership. No new or added powers of control can be created for, or enjoyed by the donor. Either the trust continues to be possessed and enjoyed by the donee, or it returns to the ownership of the donor. Until the power to revoke is exercised, the gift is complete in possession and enjoyment. The donees enjoy all the substance of the trust. The donor has

completely parted with the control over and with his property. The beneficial interest in a trust is personal property and remains a right to enforce the performance of the trust in equity, contingent upon nothing, except the terms imposed by the declaration of trust.

The power of revocation in the instant case does not bring these trust deeds within the rule laid down in *Matter of Bostwick, supra; Matter of Ely,* 149 N. Y. Supp. 90; *Matter of Schermerhorn,* Id. 95; *Matter of Hoyt,* 86 Misc. Rep. 696; *Matter of Brandreth,* 169 N. Y. 437; *Matter of Cornell,* 170 id. 423.

With Surrogate Fowler's dictum in *Matter of Garcia,* 101 Misc. Rep. 387, that " It seems to be established by the decisions of the courts of this state that if a donor reserves to himself the power to revoke the deed of trust, the transfer of the property constituting the *corpus* of the trust fund does not take place until his death." I do not concur for the reasons indicated herein. As against this dictum we have the opinion of Surrogate Thomas of the same court made in *Matter of La Farge,* N. Y. L. J. Nov. 17, 1908; he says: " The mere reservation of a power to revoke the conveyance was of itself not sufficient evidence to support a finding of an intent in the donor not to make an absolute transfer (*Matter of Bostwick,* 160 N. Y. 489, 494), and that is the only evidence relied upon by the State Comptroller."

I view the power of revocation as only a way to annihilate and put an end to the possession and enjoyment of the life estates. A way to effect a change of purpose and undo what has been done. One of two things must always be true under a lone power to revoke. The trust is destroyed and consequently the life estate and its enjoyment, or else the

Surrogate's Court, Westchester County, November, 1921.     [Vol. 117.

life estates still exist, with possession and enjoyment in the donees. The power to revoke is not evidence of an intent to postpone the legal enjoyment, existence, or effect of that which may perhaps be hereafter brought to an end, for the simple reason that the enjoyment and possession actually passed to the beneficiaries. A power to revoke may make the continuance of the estate precarious during the lifetime of the donor, but nevertheless until the right is exercised, an estate exists by virtue of the transfer and in this case was so intended. Being such, it falls without the statute.

We are well within the decisions of the *Masury* and *Bowers* cases, and within that part of the closing words of the *Bostwick* case: " If a person intends, in good faith, to make an absolute gift of his property during his life to others   *   *   * *which shall not be contingent as to its possession or enjoyment upon the event of his death,* there is no inhibition in the act in that respect." If this decision will permit trusts to be created without the taxing power of the Transfer Tax Law, the remedy lies with the legislature and not with the courts.

These deeds of trust constitute transfers of life estates in the property, except the right to revoke is reserved. No extrinsic evidence has been adduced to show that any of the deeds of trust was intended to take effect after the decedent's death. Therefore, any such intent must be found in the instruments.

I fail to find an intention upon the part of the donor to delay possession, or enjoyment, at or after her death. As a matter of law, I find that the donor had no such intention. Guided by the decisions as I interpret them, I understand the effect of the deeds of trust to be such that under the meaning of the Transfer Tax Act, they were intended to take effect

and did in fact take effect in possession and enjoyment at their several dates.

There being no intention on the donor's part to retain dominion over the property transferred, for the life of the beneficiaries, I conclude that the trust deeds are not liable to taxation under the Transfer Tax Act, such trust deeds having divested the grantor of all title so long as the power of revocation was not exercised, and becoming operative immediately upon their execution in so far as the beneficial use of the same was involved and vesting the funds in no wise contingent upon the death of the donor, in the beneficiaries.

The *pro forma* order assessing the tax upon the life estates created by said deeds of trust is reversed.

Order reversed.